# IN THE MATTER OF THE ESTATE OF JULIA H. AFONG, DECEASED

## No. 1383.

RESERVED QUESTIONS FROM CIRCUIT JUDGE FIRST CIRCUIT. HON. C. S. FRANKLIN, JUDGE.

ARGUED MARCH 3, 1922.                    DECIDED MARCH 9, 1922.

COKE, C. J., KEMP AND EDINGS, JJ.

ESTATES—*will contest—beneficial to estate when.*

Where an invalid will is successfully contested, while not adding anything to the value of the corpus of the estate, it results in preventing an unlawful distribution of the assets and brings about a lawful distribution to the lawful heirs and devisees and is therefore of direct benefit to the estate.

COURTS—*circuit judges at chambers in probate—authority to allow attorneys' fees in will contest.*

> Regardless of what the rule may be elsewhere, in Hawaii, as incidental to the general jurisdiction of a circuit judge at chambers sitting in probate, is reposed the authority to direct payment by an estate of a claim for services performed for its benefit and found to be reasonable in amount.

### OPINION OF THE COURT BY COKE, C. J.

Julia H. Afong, a resident of Honolulu, died on February 14, 1919, leaving a large estate within this jurisdiction. On February 19, 1919, the Bishop Trust Company, Limited, named therein as executor, filed an alleged will of deceased for probate. Letters of temporary administration were first issued and on October 14, 1919, the will was duly admitted to probate and the Bishop Trust Company was appointed executor thereof. An appeal to a jury from the order admitting the will to probate was taken by Bessie R. Burns and A. Henry Afong, two of the children of the said Julia H. Afong, deceased, and after a lengthy trial the jury returned a verdict finding that the will was induced by undue influence and was not the will of Julia H. Afong. From this finding and the judgment entered thereon an appeal was taken to the supreme court where the verdict and judgment were affirmed. (See *Estate of Afong,* 26 Haw. 147, where a history of the controversy is set forth in detail.) The trust company thereafter continued to act as temporary administrator and presented to the judge of the probate court an application for allowance of attorneys' fees incurred in the defense of the validity of the will in the trial court before the jury in the sum of $3000, and the contestants presented a claim amounting to $6000 for their attorneys' fees for services in the circuit and supreme courts. The judge of the probate court, while approving the amounts of the claims, was in doubt

whether any or all of said fees should be paid out of the estate and reserved to this court the following questions:

"(1) Is the fee charged by attorneys employed by the executor and/or temporary administrator payable out of the estate of Julia H. Afong, deceased?

"(2) Are the fees charged by attorneys employed by the contestants payable out of the estate of Julia H. Afong, deceased?"

Neither the amount of the fees nor the value of the services is in issue. The sole controversy turns upon the question of the judicial power reposed in the court to order payment of the claims by the estate. The attorneys for contestants do not oppose the payment of the fee asked by the attorneys for the temporary administrator. The Bishop Trust Company was nominated in the will as executor and the will on its face appeared to be valid and the last will and testament of deceased. It therefore was the duty of the trust company under section 2487 R. L. 1915 to present the will for probate to the court and after the will was admitted to probate and the trust company was appointed executor it clearly became the duty of the executor to defend the validity of the will against the attack of the contestants and it is incumbent upon the estate to reimburse the executor for its expense, including a reasonable attorneys' fee incurred in the proceeding. See *Notley* v. *Brown,* 16 Haw. 575; *McIntire* v. *McIntire,* 192 U. S. 116; *Bratney* v. *Curry,* 33 Ind. 399; *Parker* v. *Leighton,* 102 Atl. 552; 18 Ann. Cas. 742.

The main controversy is in respect to the second question reserved by the circuit judge, that is, are the fees charged by attorneys employed by the contestants payable out of the estate of the deceased? Counsel for the temporary administrator contend that a circuit judge sitting in probate is not a chancery court with powers usually enjoyed in equity matters but is a law tribunal created by statute and is clothed only with such powers and author-

ity as are expressly conferred by statute; that there is no statutory authority for the payment of the attorney's fees of a contestant in a will contest proceeding, and that therefore the second question should be answered in the negative. It may be well here to point out that in this Territory both equity and probate jurisdiction are vested in circuit judges at chambers but that these two tribunals are entirely distinct and separate. (See *Colburn* v. *Whitney,* 23 Haw. 32.) We have no hesitation in holding that the services of counsel in successfully contesting the invalid will conferred a benefit upon the estate. It may be true that the result of this contest neither added to nor took away anything from the value of the corpus of the estate but it did result in preventing an unlawful distribution of the assets thereof and brought about a lawful distribution to the lawful heirs or devisees. This we conceive to be a direct benefit to the estate. Morally then, if not legally, the estate should pay the reasonable value of the services rendered.

Section 2272 R. L. 1915 confers in general terms jurisdiction upon circuit judges at chambers in probate matters. Much that is incidental to the proper exercise of these powers is not expressly set forth in the statute, a fact which is referred to in *Carter* v. *Gear,* 16 Haw. 242, at 248, in language as follows: "The jurisdiction and procedure of the courts and the judges at chambers is not all defined by statute. Much of it is covered by statute only in a very general way. For instance, judges at chambers are given jurisdiction in equity in general terms —which means that they have such equitable jurisdiction as has been exercised in chancery in England and the equity courts in America. Even the act of 1878 which enumerates many subjects of equity jurisdiction is not exclusive, although it was taken from the Massachusetts statute which is there held exclusive. See *Dole* v. *Gear,*

14 Haw. 560. Similarly as to guardianship matters. See
*Hoare* v. *Allen,* 13 Haw. 262. Much as to jurisdiction
and procedure is governed by what may be considered
Hawaiian common law—that has grown up without the
aid of statute or has been built upon statutes by infer-
ence and been recognized by bench and bar and has to
some extent been assumed in the enactment of statutes.
In fact, the judiciary has developed here, especially in its
earlier period, much as it did in early English history,
gradually, and largely without the aid of statute." The
decision in *Hoare* v. *Allen, supra,* in similar language
asserts that our courts of probate in the matter of the
supervision of the estate of minors possess, except as
modified by statute, all the powers which the courts of
chancery in England originally possessed under the com-
mon law and lays down the rule that even in the absence
of statute or of common law authorization a judge sitting
in probate has the power to authorize the guardian of the
property of the minor to mortgage the property of his
ward.

Regardless of what the rule may be elsewhere, in
Hawaii, as incidental to the general jurisdiction of a cir-
cuit judge at chambers sitting in probate, is reposed the
authority to direct payment by an estate of a claim for
services performed for its benefit and found to be reason-
able in amount. The recent decision of this court in the
matter of the *Estate of Thomas K. Lalakea,* 26 Haw. 243,
is directly to this effect. In that case it was held that the
attorneys' fees incurred by some of the heirs in contesting
an illegal claim of an administrator against the estate
were properly chargeable to the estate because the services
inured to its benefit. There is no express statutory
authority for that holding but it is founded upon those
general and incidental powers referred to in *Hoare* v.
*Allen* and *Carter* v. *Gear, supra.*

The two questions reserved are answered in the affirmative.

*A. L. Castle* (*Robertson & Castle* on the brief) for the temporary administrator.

*U. E. Wild* and *B. S. Ulrich* (*Thompson, Cathcart & Ulrich* and *Frear, Prosser, Anderson & Marx* on the brief) for the contestants.