**BESSIE CAGNEY MILLER, et al., v. J. M. FLOWERS, as Executor**

27 So. (2nd) 667                                June Term, 1946
October 22, 1946                                       Division B

*Carl T. Hoffman, N. J. Durant* and *Sam C. Matthews,* for appellants.

*John M. Murrell* and *J. M. Flowers,* for appellee.

THOMAS, J.:

The will of Mary F. Cagney, aged ninety years when she died, was probated, then challenged by appellants, two brothers and two sisters, nephews and nieces of testatrix, on the grounds that, as a matter of fact, the testatrix lacked capacity when she executed the will, and, as a matter of law, the trust attempted to be established was invalid. The parties have agreed that these two questions, one of fact and one of law, are properly presented for determination by this court. In deciding the first we shall bear in mind that the testatrix was capable of making the will if she comprehended in a general way the nature and extent of the property devised, her relationship with those who would naturally benefit or were the proper objects of her bounty, and the practical effect of the testamentary act. Marston v. Churchill, 137 Fla. 154, 187 So. 762. It should be added that these rules apply only to the mental condition of the testatrix at the time she actually executed the will, for if she was then lucid it would be of no consequence that beforehand or afterward she had been mentally unbalanced, or even insane. In re: Carnegie's Estate, 153 Fla. 7, 13 So. (2nd) 299.

We shall now proceed to an analysis of the testimony in the light of these legal principles and the additional one that if there was substantial competent testimony to support the conclusion of the probate judge that the testatrix did possess the capacity to make her will, and he did not misinterpret the legal effect of the whole testimony, we shall not disturb his finding.

The evidence offered by the appellants fell far short of establishing that the testatrix was mentally incapable at the time she executed the will. Two of appellants testified. One of them stated that she had not seen the testatrix for more than ten years, had not heard from her for more than three, and she admitted that she knew nothing at all of the mental condition of the testatrix for the ten years preceding the date of the will. The other appellant saw the testatrix for the last time in 1934, seven years before the execution of the will, and had no correspondence whatever with her. The remaining witness supporting the petition for revocation of probate was

a former assistant county solicitor who testified about certain hallucinations which the testatrix reported to him, but this occurred more than a year before execution of the will, for he had not seen her since late in the spring of the year 1940, and even this witness said that "her mind seemed to be perfectly clear" about some topics and that she was "a very fine sort of woman."

There is abundant testimony in the record on the part of the appellee to dispel the contention that the testatrix was so deranged mentally that she could not qualify, under the rules we announced at the outset, to dispose of her property by valid will.

Mr. Flowers, executor of the estate, who appears now as counsel as well as appellee, recounted his experiences with the testatrix, who had been his client for a considerable period of time. She had repeatedly expressed to him her dislike of the appellants Walter and David Cagney and her desire not to leave them any of her estate. When the time came to draw the will Miss Cagney appeared at the office of Mr. Flowers to obtain his services. In their conversation she reiterated her aversion to "the Cagneys," a classification which apparently embraced all four appellants, and indicated that she would like to devise her property to Mr. Flowers, and to his secretary to whom she had formed an attachment. Mr. Flowers then, with laudable motive, declined to have any part in preparing the instruument, and recommended Judge Stanley Milledge, who at that time was a practicing attorney. Judge Milledge drew the will; it was executed in his office by the testatrix and witnessed by himself, Mr. Flower's secretary, and a Mr. Rosenhouse, an attorney of New York. The three witnesses to the will, who were also witnesses in the case, testified variously that the testatrix was at the very time thoroughly familiar with the consequences of her act; was mentally normal; was keen and alert; knew "perfectly well what she was doing"; was in good spirits.

Besides the evidence of hallucinations that some of "the Cagneys" had followed her and attempted to asphyxiate her, in itself not too convincing and revealed in a conversation too remote to shed light on her true mental condition at the time

she signed her will, appellants have stressed a provision of the instrument itself as indicating inferior or defective intelligence. She devised $5,000 to each of three persons described as cousins, an equal amount to the "Blind Asylum on 59th Street, in New York City," and placed the residue in a trust we shall presently describe. One of the cousins named was Ellen McLean McDermott, who it is charged did not exist. The only cousin of testatrix with a similar name was Ellen Perry McLean who died more than thirty years ago. This error seems not to be explained by appellee in his brief, but we are not inclined to hold that a mistake of such character by one who, when it was made, had reached the age of 87 years is of such consequence that it would establish her inability to execute the will. True, it was a material circumstance to be considered in judging her capacity, but there is such a dearth of other like circumstances and there is so much evidence to refute the charge of incapacity that we shall not because of it disturb the judgment.

The last question constitutes a challenge to the final clause of the will devising in trust to Mr. Flowers the residue of the estate. He was given power to use it "for the education and advancement of the learning of deserving young men or young women." He was given sole power to fix the number and select the persons who would benefit by the trust, and the trust was to expire whenever the corpus to be used for this purpose had become exhausted. Appellants insist that the terms of the trust are too indefinite; that it violates the rule against perpetuities. The trust is a charitable one, Pattillo v. Glenn, 150 Fla. 73, 7 So. (2nd) 328, hence not affected by the rule against perpetuities. Montgomery et al. v. Carlton et al., 99 Fla. 152, 126 So. 135. If anything, the trust in the instant case is more certain as to its operation than the one quoted in Pattillo v. Glenn, supra, and its termination is much more definite because in the instant case the trustee is authorized to *pay* expenses of worthy students, the trust to end when the corpus is exhausted. In the cited case the trustee was empowered to *lend* at interest; so the trust fund would be replenished from time to time by repayment of the loans. The court indicated in that opinion that the trust fund might be-

come depleted by losses from unpaid loans, hence could not be said to violate the law against indefinite accumulations. Plainly if money under the present trust is expended and not repaid and does not earn interest, exhaustion of the fund is inevitable, although, of course, the time of expiration of the trust would vary according to the number of beneficiaries selected by the trustee and the amounts expended upon each of them.

A careful study of the record has convinced us that we should affirm the order of the circuit court which affirmed the judgment of the county judge's court.

Affirmed.

CHAPMAN, C.J., BROWN, J. and PAUL D. BARNS, Circuit Judge, concur.