66 So.2d 465 (1953)
In re WILMOTT'S ESTATE.
Supreme Court of Florida, Division A.
June 5, 1953.
Rehearing Denied July 3, 1953.
Alex Akerman, Jr., Orlando, and J.B. Hodges, Lake City, for appellant.
Fishback, Williams & Smith, Orlando, for appellee.
*466 SEBRING, Justice.
Frederick W. Wilmott died on November 30, 1949. Among his papers and effects were a will dated October 28, 1948, a codicil dated October 29, 1948, a second codicil dated April 27, 1949, a will dated June 24, 1949, and an instrument dated June 29, 1949, which purported to be a republication of the will executed on October 28, 1948.
After his death a petition was filed in the County Judge's Court of Orange County by certain of the devisees under the wills praying for the probate of the republication instrument dated June 29, 1949. William Wilmott, an adopted son of the decedent, filed objections to the probate of this instrument, and all other testamentary instruments found at the death of the decedent, on the ground that at the time of their execution the decedent lacked testamentary capacity.
The county judge, on November 6, 1951, entered an order denying the petition for the probate of the republication instrument dated June 29, 1949, and granting leave to the petitioners to file a petition for the probate of the will dated October 28, 1948, and the codicil dated October 29, 1948. The basis of this ruling was the finding of the county judge that the decedent had not possessed testamentary capacity from April 27, 1949, to June 29, 1949, inclusive.
The practical effect of this ruling was to render invalid the instrument dated June 29, 1949, which on its face reinstated the will of October 28, 1948, and also to render invalid the will dated June 24, 1949, and the second codicil to the will executed in October 1948.
After the entry of this order the petitioners filed their petition praying that the 1948 will and codicil be admitted to probate and letters testamentary be issued thereon. William Wilmott, the adopted son, filed an answer contesting this proceeding on the ground that at the time the proffered instruments were executed the decedent was mentally incapable of making a will, and furthermore that the instruments were executed as the result of the undue influence of the petitioners.
On December 20, 1951, the county judge entered an order allowing the probate of the 1948 will and the codicil. The basis of this order was the finding by the county judge that the testator possessed testamentary capacity at the time he executed the instruments, and that no undue influence had been exercised by anyone in bringing about their execution.
At a later date, the county judge entered an order denying the application of the adopted son for the allowance of costs and an attorney's fee to his attorney in connection with the contest of the purported republication dated June 29, 1949.
An appeal was taken to the Circuit Court of Orange County from all of these orders.
At final hearing, the circuit court ruled that the order of the county judge denying the probate of the republication instrument dated June 29, 1949, and admitting the 1948 will and codicil to probate, should be affirmed; that the order with reference to the application for the allowance of attorney's fees and costs should be affirmed insofar as it disallowed an attorney's fee to the protestant, and that the order should be reversed as to the disallowance of costs.
The whole matter is now before this Court on an appeal taken from the order entered by the Circuit Court of Orange County.
The first question with which we shall deal arises from the adjudication in the decree that the decedent was legally capable of making the will and codicil executed in October 1948. The appellant maintains that inasmuch as the finding of the county judge was that the decedent was incapable of making a will during the period extending from April 27, 1949, to June 29, 1949, the finding should have been that the decedent was likewise incompetent in October of 1948, there being no showing that his condition had changed materially from October 1948 until April of 1949, and there being a substantial showing that the probable incompetency was as early as October of 1946.
While it is true that the decedent was not in good health during 1948 and *467 that his condition worsened to such an extent that on April 27, 1949, he was, as found by the county judge, "so sick in body and mind that he did not possess the testamentary capacity required by law to execute" a will, it does not necessarily follow from this that he was not competent to execute a will on October 28, 1948, the day he executed the instrument that was later admitted to probate. Whether he was or was not lacking in testamentary capacity upon that day was a pure question of fact to be determined by the county judge.
The rule governing appeals in respect to such determinations is that the circuit court, on consideration of the evidence, should not reverse an order of the county judge sitting in probate unless it is made to appear that the county judge wholly misapprehended the legal effect of the evidence as an entirety, or made a finding when there was no legal substantial evidence to support it. In re Thompson's Estate, 145 Fla. 42, 199 So. 352.
In the case at bar there was substantial evidence to support the finding of the county judge. Upon a review of the order entered by the county judge the circuit court found that while during his long illness "large quantities of narcotics were administered to [the decedent] and upon many occasions he was under the influence of same so that he was incompetent to make a will, [nevertheless] when he was out from the effect of the drug he was rational and capable of transacting business. There is no showing that at the time of executing the October 28th will or the October 29th codicil he was under the influence of narcotic or otherwise, but on the contrary [there are] facts showing that his mind was clear; that he understood about his property and the disposition he was making of same. The order must be affirmed."
We agree with the conclusion reached by the circuit court in its order. The making of a will does not depend upon a sound body but upon a sound mind. By "sound mind" is meant the ability of the testator "to mentally understand in a general way the nature and extent of the property to be disposed of, and the testator's relation to those who would naturally claim a substantial benefit from the will, as well as a general understanding of the practical effect of the will as executed." Newman v. Smith, 77 Fla. 633, 82 So. 236, 241; Hamilton v. Morgan, 93 Fla. 311, 112 So. 80; Marston v. Churchill, 137 Fla. 154, 187 So. 762; Miller v. Flowers, 158 Fla. 51, 27 So.2d 667; Neal v. Harrington, 159 Fla. 381, 31 So.2d 391. A sick person may make a valid will in his last illness or even when in a dying condition. "And, unless the surrounding circumstances are such as to show that not only was the testator afflicted with an impairment of his senses, such as would ordinarily be occasioned by diseases * * * but is, by reason of the effect of disease on his mind, also unable to comprehend and understand the nature of the undertaking in which he is engaged when he attempts to make his will, it cannot be said as a matter of law that testamentary capacity is shown to be so lacking as to render a will made during one's affliction and last illness invalid for want of sufficient testamentary capacity. If the testamentary requisites are found, the will may be valid, although executed by one of great age, whose mind is enfeebled, whose body is debilitated, whose memory is failing or whose judgment is vacillating, especially where the will appears to have been fairly made, is not an unnatural one, and apparently was made under conditions not inconsistent with the inference that it emanated from a free mind." Smith v. Clements, 114 Fla. 614, 154 So. 520.
The appellant attaches great significance to the evidence which establishes the fact that during the course of his illness narcotics were administered to the decedent and that on the day of the execution of the will an inordinate quantity was delivered to his home. We have given due consideration to this in the light of the whole evidence and are not shaken in our conclusion that the circuit court ruled correctly in affirming that portion of the county judge's order dealing with the question of testamentary capacity. For the law is plain that the fact that one is a user of narcotics does not necessarily deprive him of testamentary capacity. Fernstrom v. Taylor, *468 107 Fla. 490, 145 So. 208. He may be an addict and yet have the capacity which the law requires for making a will, if, in spite of the use of narcotics, he has sufficient mind and memory to understand the nature and extent of his property, the proper objects of his bounty and the nature of his testamentary act. Indeed, it is possible that a testator may have testamentary capacity even though it is proven that he was somewhat under the influence of drugs at the time he executes a will. The same is true where the ravages of disease combine with the effects of drugs. In such situations, as in all others, the question to be determined is solely that of the mental capacity of the testator at the time he executes the instrument. Page on Wills, 2nd ed., Vol. 1, section 159.
A second question raised by the appellant is as to the finding of the county judge that no undue influence was exercised in procuring the execution of the will that was admitted to probate. We conclude, upon a consideration of the whole evidence, that the circuit court did not err when it affirmed the county judge on this issue. A third question raised by the appellant is in respect to the ruling of the county judge that the appellant was not entitled to an attorney's fee to be paid out of the assets of the estate for services rendered by his attorneys in the republication proceedings.
In support of his contention that the county judge erred in disallowing an attorney's fee, the appellant takes the following position: In the 1948 will only the two petitioners, sisters of decedent, were named as residuary legatees, while under the terms of the 1949 will not only the petitioners but also one Lillie Mae Sharpe, an adopted daughter of the decedent, would have been entitled to share in the residuum. In the 1948 will one Bessie Sweat was devised two certain lots of real property that were owned by the decedent, while under the terms of the second codicil to the 1948 will, which was dated April 27, 1949, one of these lots was devised to one Edith Dillingham. Due to his efforts in the proceeding instituted to probate the republication instrument dated June 29, 1949, this instrument, as well as the will executed on June 24, 1949, and the second codicil to the 1948 will, dated April 27, 1949, were denied probate because of the lack of testamentary capacity of the decedent to execute the instruments. By reason of his efforts in this behalf, the appellant benefited the estate by preventing an illegal distribution of the assets under these invalid instruments, thereby assuring to Bessie Sweat two lots of real property instead of one, and also increasing the shares of the petitioners, who were residuary legatees under the 1948 will, from one-third of the residuum of the estate to one-half.
In opposition to this contention the appellees assert that in all the testamentary instruments that were before the county judge for adjudication, the provision made for the appellant was precisely the same, namely, a specific bequest for the sum of one-dollar. The contest made by the appellant in respect to these instruments was not induced by any desire on his part to benefit the estate and the lawful beneficiaries thereof, but was solely for the purpose of destroying all instruments executed by the decedent so as to create a condition of intestacy by virtue of which the appellant would profit handsomely under the statute of descent and distribution.
The appellees assert, further, that the appellant "is not correct in assuming that he has benefited the estate by increasing the share of proponents from 1/3 to 1/2, because neither contestant or proponents ever took the position that the will of June 24, 1949, was a valid last will and testament * * * and that if said will had been declared by the court of his own motion to be the last will and testament of Frederick W. Wilmott such decision would have been made by the court based on the testimony and not at the urging of either proponent or contestant. * *"
Finally, the appellees assert that if there had been no contest, "the republication of the October 28, 1948, will with the codicil of October 29, 1948, and the codicil of April 27, 1949, would have been the effective last will and testament. The attack on the republication by the contestant resulted in canceling only the codicil of April 27, 1949," which did nothing more *469 than change the ownership of one lot of land valued at $1,400 from Bessie Sweat to Edith Dillingham. Under these circumstances  so the appellees assert  the appellant should not be entitled to an attorney's fee out of the estate, because the cost thereof will have to be borne "by the residuary legatees from whom William Wilmott, by his contesting of the will, sought [unsuccessfully] to take everything."
The issue is whether upon the facts shown by the record the services of counsel for appellant in this litigation have been of benefit to the estate so as to entitle him to an attorney's fee out of the estate under the terms of section 734.01(2), Florida Statutes 1951, F.S.A., which provides:
"Any attorney who has rendered services to an estate or the personal representative may apply to the court by petition for an order making an allowance for attorney's fees, and, after notice to persons adversely affected, the court shall make such order with respect thereto as shall be proper."
In connection with our consideration of section 734.01(2), it should be noticed that section 732.14(3) provides a different standard for allowance of fees to counsel for personal representatives who are proponents of a will, then does section 734.01(2). The decisions under this section, which apply the test of prima facie justification or good faith, are therefore not controlling in the present situation. Compare Watts v. Newport, 151 Fla. 209, 9 So.2d 417, and In re Graham Estate, 156 Fla. 421, 23 So.2d 485.
The facts of the case under consideration present a question somewhat different from any so far ruled upon in Florida, and the authorities in other states are in conflict on the point. See anno. 10 A.L.R. 805, 69 A.L.R. 1058, and 128 A.L.R. 1011, upon the right of one other than a personal representative contesting a will to an allowance for attorney's fees payable out of the estate. According to one doctrine, in the absence of a specific statutory provision the right of a will contestant to an allowance of fees depends upon his having had probable cause for initiating the contest. Conner v. Brown, 9 W.W. Harr. 529, 39 Del. 529, 3 A.2d 64. According to more numerous cases, the right to attorney's fees in such instances depends upon the applicant having successfully concluded the contest of the will. The latter rule, allowing fees to successful contestants, is applied in jurisdictions having statutes similar to section 734.01(2) or having no provision at all on the subject, on the theory that an estate is necessarily benefited whenever the probate of an invalid will is successfully contested. It is said in such cases that "The property does not pass according to the terms of the false will * * * an unlawful distribution is prevented, and a lawful one enforced." In re Merica's Estate, 99 Neb. 229, 155 N.W. 887, 888. It is also said that while "it may be true that the result of this contest neither added to nor took away anything from the value of the corpus of the estate * * * it did result in preventing an unlawful distribution of the assets * * *. This we conceive to be of direct benefit to the estate." In re Afong's Estate, 26 Haw. 337. See also In re Faling's Estate, 113 Or. 6, 228 P. 821, 231 P. 148.
Under the probate laws of Florida, attorneys' fees have been denied to counsel for heirs who attempted, unsuccessfully, to destroy a trust created under their ancestor's valid will on the ground that the trust purpose had failed and hence they were entitled to the remainder. Lewis v. Gaillard, 70 Fla. 172, 69 So. 797. Fees have likewise been denied to counsel for parties who attempted unsuccessfully to revoke the probate of a will. Smith v. Callison, 152 Fla. 516, 12 So.2d 381. The applicant in each case, a moving party in litigation brought to overthrow a duly established instrument, was wholly unsuccessful in his efforts to destroy the instrument or instruments under attack.
This Court has more recently approved the allowance of reasonable attorneys' fees to counsel for a party who successfully contested the probate of a "bogus" will, thereby establishing as vaild and operative a prior will under which the contesting party received a legacy. In re Cobb's Estate, 157 Fla. 590, 26 So.2d 442. See also Johnson *470 v. Burleson, Fla., 61 So.2d 170. But the question of the allowance of attorney's fees as a claim against an estate, where such attorneys were successful in setting a will aside and in effecting a change in the manner of distribution, but were not successful in achieving their underlying objective of intestate distribution, has never before been squarely presented.
We think the facts of the present case bring it within the principles of the better reasoned decisions permitting recovery of reasonable counsel fees. The appellant presented defenses as contemplated by the applicable statutes when he was given notice by the appellees, who in offering the several instruments for probate represented by implication that they were valid and that the testator had capacity to execute them. Appellant's purpose in waging the contest was, necessarily, to demonstrate the invalidity of the will, or republication, being offered for probate. In this he was successful. Moreover he was successful in establishing a lack of testamentary capacity in the decedent during the period from April, 1949, to June, 1949 thereby defeating all instruments executed by the decedent during that period: namely, the republication instrument which if not successfully contested would have reestablished the October, 1948, will as the last will and testament of the decedent; the will of June 24, 1949, which had there been no adversary contest would have stood as a possible obstacle in the path of the 1948 will whenever the latter was offered probate as an original instrument; and finally, the second codicil to the 1948 will, dated April 27, 1949, which changed the terms of the 1948 will in at least one particular. It is merely a coincidence that under the terms of the prior will and codicil finally established, after intervening instruments had been set aside, the distribution of the assets of the estate will be similar in most particulars to what the distribution would have been under the invalid republication instrument, and that appellant will receive no greater share than that which he would have received had he remained silent.
The services of counsel in preventing distribution under invalid instruments must be held to confer a benefit upon the estate, and under the terms of section 734.01(2), Florida Statutes 1951, F.S.A., attorneys' fees should be allowed. Upon the same principles, reasonable costs are also allowable under section 732.14(1). Compare Lewis v. Gaillard, supra.
From the conclusions reached it follows that the judgment appealed from must be affirmed in part and reversed in part, with directions that the circuit court enter an order commanding the county judge to fix and allow reasonable attorneys' fees to counsel for the contestant in accordance with this opinion, and that costs be allowed in accordance with law.
It is so ordered.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.