PRUNTY, Associate Justice.
The appellants were named executor and principal legatees, respectively, under the purported last will and testament of Anna M. Scheidler. They appeal from an order of the Circuit Court upholding and affirming an order of the County Judge, holding this will invalid and refusing to admit it to probate on the ground that the decedent *600 lacked testamentary capacity to execute the purported will.
Anna M. Scheidler died November 14, 1952, and left a purported will which was dated October 26, 1952. The executor named in the will filed a petition for probate; and appellee, Ed Kane, filed a caveat and defenses on the grounds that the alleged will was not the will of the deceased, that she was not mentally and physically capable of executing a will on October 26, 1952, and that the alleged will was a product of duress and undue influence. Subsequently the Florida Elks Association filed its answer and objections to the purported will.
During the hearings before the County Judge thirty-six witnesses testified. The transcript of the testimony consists of 3,105 pages, approximately one-third of which covers the testimony of the appellants. The Rules of Practice adopted for .the Supreme Court, July 19, 1954, 30 F.S.A., have apparently done little to diminish the records in cases such as this.
A review of this exhaustive record reveals that a considerable part of the testimony sheds feeble light upon the issue involved.
The sole question involved is the sufficiency of the evidence to establish lack of testamentary capacity of the testatrix to execute the purported will dated, October 26, 1952.
The probate judge heard all the witnesses except those who testified by deposition and set forth in his final order an adequate review of his actions and his findings. The pertinent portions of the order of the probate court are as follows:
“All of the testimony in this proceeding has been presented before and heard by the Court except the depositions of Joseph E. Williams, Mrs. Pearl A. Counterman and Mrs. Augusta Walters on March 10, 1953, before Nathan L. Friedman, Notary Public of the State of Florida at Large, and each of said witnesses appeared in this cause before the Court and were examined and testified at length in the hearing and presence of the Court, and in said examination they were examined at length concerning their said depositions.
“The Court permitted the examination of the two alleged attesting witnesses to the purported will by contestants and by the Court out of order of their presentation as witnesses by the petitioner, over objection of said petitioner. This objection was overruled on the view of the Court that attesting witnesses to a will on contest are more properly witnesses of the Court than of the proponent or contestants of the alleged will. And as the case unfolded it appeared to the Court that such preliminary examination of said witnesses was eminently proper.
“It appears from the evidence that Mrs. Scheidler, the decedent, was a patient at a rest home at 405 S. Boulevard during part of October, 1952, and throughout the testimony this rest home was referred to as Buzzards Roost. It seems to the Court, from all of the evidence in this cause, that this figure of speech clothed in more refined terminology might appropriately be applied to 110 North Boulevard, the home of the decedent. Instead of carrion crow let us say kindly disposed people, apparently hopeful of reward for favors bestowed on Mrs. Scheidler, were frequently crossing the threshold of the door of said sick woman’s room.
“The rights of Florida State Elks’ Association, Inc. as contestant were not prejudiced by the withdrawal of Ed Kane’s charges of undue influence by Mrs. Walters. Ed Kane only absolved Mrs. Walters and he did not exculpate Mrs. Counterman of the charges of undue influence. And, as stated, this withdrawal did not affect the contest of this ground by said Florida State Elks’ Association, Inc. against either of said principal beneficiaries.
“It is the opinion of the Court, from all the Competent, credible, relevant *601 and material testimony in this cause that the alleged testatrix, Mrs. Anna M. Scheidler, lacked testamentary capacity on the day of the execution of the purported will, preceding and at the time of the alleged execution of the said document, or at any time thereafter.
“The contestants contended vigorously that the evidence shows that the purported will was not duly and regularly executed and attested. The evidence and legal inference logically deducible therefrom point to many instances or indicia or irregularities and discrepancies attending and in the manner, form and legal sufficiency of the execution of the purported will. But in view of the finding of the Court, hereinbefore and hereinafter stated, the Court finds it unnecessary to make any finding on this ground of contest of the petition and alleged will.
“From all the competent, credible, relevant and material testimony in this cause the Court finds, and is of the opinion, that all the essential elements of undue influence existed and are shown in the evidence in this cause except one: a mind susceptible of being influenced. The Court finds, and is of the opinion, that the alleged testatrix, Mrs. Anna M. Scheidler, lacked sufficient mental capacity at any time on the day of the alleged execution of the purported will and at the time of the alleged execution of said document and at any time thereafter to be subject to influence in the execution of a testamentary document. Except for such finding and opinion of lack of testamentary capacity of said decedent, the Court finds and would herein order and adjudge the will invalid by reason of undue influence, the Court finding and being of the opinion that undue influence is otherwise shown by the competent, credible, material and relevant testimony in this cause.
“By the preponderance of the material, relevant and credible evidence in this cause, it appears clear to the Court, and the Court finds and is of the opinion that Mrs. Anna M. Scheid-ler lacked testamentary capacity preceding, at the time of and following the execution of the alleged will.
“The record of this case is replete with improbabilities of the validity of the will of the said decedent. The following are a few of them. The testimony of Mrs. Counterman that she was surprised to learn that she was a beneficiary is not consistent with her testimony that she received no compensation for her services to Mrs. Scheidler from about the 8th of October to the 14th of November, 1952, though she said she had no other income. Mrs. Counterman testified that she spoke about compensation but was told that she would be taken care of and she did not ask again for compensation. It seems improbable from all the evidence in the case that Mrs. Walters did not know when she called Joseph E. Williams, Esq., attorney, to the Scheidler home on the afternoon of October 26, 1952, that he was coming there to draw a will for Mrs. Scheidler, as Mrs. Walters testified. Competent and credible evidence manifesting a long-continued purpose of Anna M. Scheidler to dispose of her property contrary to the purported will refute the truth of the document as a testamentary disposition of the decedent’s property. That Mrs. Anna M. Scheidler would call Ed Kane a crook and still leave him $500 in her purported will seems improbable. The evidence in this record shows that Ed Kane was a better friend and did more for Mrs. Anna M. Scheidler than did Mrs. Counterman, and that he was equally as good a friend of Mrs. Scheidler as was Mrs. Walters. It therefore seems improbable that the bequest to Kane would have been so much less than that to Mrs. Counterman if Mrs. Scheidler possessed the testamentary capacity to make said will. These indicia are cited as improbabilities and as bearing on the veracity of witnesses, *602 and are not to be understood as being the sole basis in the record for the Court’s finding, conclusion and opinion in this case.
“The petitioner and said beneficiaries ■ seek to show that subsequent to October 26, 1952, to-wit, on November 3, 1952, Mrs. Scheidler was rational and mentally competent. This is attempted by the proferred [sic] testimony of Mrs. McMahan, a collector for Tampa Municipal Hospital. But this testimony, in the opinion of the Court, shows on the contrary that Mrs. Scheidler lacked rationality and mental competency at said time.
“As hereinabove shown, the Court heard the testimony of all the witnesses in this cause. Following the taking of the testimony the Court heard counsel for the petitioner and intervenors and contestants for a considerable length of time.
“It is therefore and upon consideration of the evidence and record in this case, and the Court’s findings and conclusions hereinbefore stated, ordered, adjudged and decreed as follows:
“1. That the motions of the petitioner, Joseph E. Williams, Esq. to strike and dismiss the defenses of the ‘ contestant Ed Kane, filed on January 12, 1953, be and the same are hereby denied.
“2. That the decedent, Anna M. Scheidler, lacked testamentary capaci-city to execute the purported will, and the contests on said ground are hereby sustained.
“3. That the alleged will of Anna , M. Scheidler dated October 26, 1952, is held and declared invalid and refused admittance to record and probate; and that the petition to record and probate said alleged will be and the same is hereby denied and dismissed.”
The record clearly demands the application of the now well established doctrine that interference with the findings of fact and conclusions of law of the Probate Court will not be indulged in unless it clearly appears that the trial court has misapprehended the legal effect of the evidence as a whole. '
This case is controlled by the holding of the Court in Zimmerman’s Estate, Fla., 84 So.2d 560, 561, wherein it was stated:
“An examination of the record before us, despite its complexity and tak-irig into consideration the merits of the analysis of the facts as well as the, principles of law so ably advanced by counsel for all of the parties, leads us again to the conclusion that there is adequate evidence to support the result reached by the probate judge and that there is no basis in this record for any conclusion on our part that he misinterpreted the legal effect of the evidence as a whole. .This obviously leads to the further conclusion that in approving the order of the probate judge, the circuit judge ruled correctly. See In re Eberhardt’s Estate, Fla. 1952, 60 So.2d 271; In re Wilmott’s Estate, Fla. 1953, 66 So.2d 465 [40 A.L.R.2d 1399]; In re Kiggins’ Estate, Fla.1953, 67 So. 2d 915; In re Baldridge’s Estate, Fla. 1954, 74 So.2d 658; In Matter of Estate of Thompson, Fla., 84 So.2d 911.”
Wc are aware that appellants have relied strongly in their argument on the case of, In re Garrett’s Estate, Fla.1952, 60 So.2d 281. We can see little comfort here for appellants,, since that case alsp approves the rule that the findings of the probate court, affirmed on appeal by the circuit court, should not be disturbed unless clearly erroneous or against the manifest weight of the evidence.
We fail-to find merit in the complaint of appellants that the-probate judge failed to act impartially- in personally conducting a rather lengthy interrogation of certain witnesses. It was the duty of all *603 ^participants to seek to elicit' all evidence pertinent to the issue.
As in the Zimmerman cáse, the circuit judge who reviewed the probate appeal recites in his order that he has accomplished a careful inspection of the .record and listened to oral argument of counsel.
The order of the chancellor appealed from apparently followed the previous pronouncements of this cqurt in sustaining the order of the probate trial court and is free from error and is therefore
Affirmed.
DREW, C. J., and TERRELL and THORNAL, JJ., concur.