122 So.2d 243 (1960)
In re ESTATE of Catherine B. BAILEY, Deceased.
Edward B. BAILEY, Agnes B. Brenning and John B. Bailey, Appellants,
v.
Hugh Bradley BAILEY and Atlantic National Bank of West Palm Beach, Florida, As Executor of the Estate of Catherine B. Bailey, Deceased, Appellees.
No. 1411.
District Court of Appeal of Florida. Second District.
July 20, 1960.
Rehearing Denied August 2, 1960.
*244 R.D. Maxwell, Jr., Miami, and Caldwell, Pacetti, Robinson & Foster, West Palm Beach, for appellants.
Warwick, Paul & Warwick, West Palm Beach, for appellees.
PER CURIAM.
Of the six children of Catherine B. Bailey, deceased, three of them are appealing from an order of the county judge's court dismissing petition for revocation of probate of their mother's will sought by four of the children in the court below. One of the petitioners, Margaret B. Speno, withdrew from the case after entry of the probate order. The others, complaining that *245 their mother under the will left substantially all her property to one son to the exclusion of her other children, are grounding their appeal upon testamentary incapacity of the testatrix at the time she executed the will in question and upon undue influence by its primary beneficiary, the decedent's youngest son, Hugh Bradley Bailey. These are the grounds upon which the petition in the court below was predicated.
Catherine B. Bailey died on January 31, 1958, at the age of eighty-four, and the will here involved was executed November 22, 1957, slightly more than two months before the decedent's death. Under the terms of the will, after provisions for certain expenses and for a bequest of $1,000.00 to a religious organization, Mrs. Bailey devised and bequeathed all the remainder of her property, about $30,000.00 in value, to her children in equal shares. A power of appointment given to Mrs. Bailey in 1920 in a certain agreement between her brother, Edward R. Bradley, deceased at the time Mrs. Bailey died, and Bankers Trust Company in New York, and another power of appointment given her by that brother through his last will creating a trust for Mrs. Bailey's benefit were exercised in the decedent's will in favor of her youngest son, Hugh Bradley Bailey. These trust funds over which the deceased held powers of appointment constituted the bulk of her estate, representing a value of three quarters of a million dollars and having brought an annual income of about $20,000.00 to Mrs. Bailey prior to her death.
The probate judge found that there was no substantial evidence to support the appellants' charge of undue influence and that the appellants otherwise failed to carry the burden cast upon them to show lack of testamentary capacity on the part of the deceased at the time of the will's execution. He found that much of the appellants' testimony was medical in nature and consisted of hypothetical questions to two medical experts purporting to show that the deceased lacked testamentary capacity because of drugs such as phenobarbital and thorazine which she had taken for a number of years prior to and at the time of execution of the will, but that such testimony fell far short of establishing lack of testamentary capacity.
Whether one has testamentary capacity is a question determinable only by mental capacity of the testator at the time he executed his will. The making of a will does not depend upon a sound body but upon a sound mind. The term, "sound mind", means the ability of the testator "to mentally understand in a general way the nature and extent of the property to be disposed of, and the testator's relation to those who would naturally claim a substantial benefit from the will, as well as a general understanding of the practical effect of the will as executed." In re Wilmott's Estate, Fla. 1953, 66 So.2d 465, 467, 40 A.L.R.2d 1399; Newman v. Smith, 1919, 77 Fla. 633, 82 So. 236, 241; Hamilton v. Morgan, 1927, 93 Fla. 311, 112 So. 80; and Neal v. Harrington, 1947, 159 Fla. 381, 31 So.2d 391.
Catherine Bailey suffered a stroke in 1950 which left her with some weakness in her left arm, left leg, and in the left side of her face. There is evidence to the effect that she experienced a good recovery so that she was able to go to the race track, to do her own shopping, and to entertain friends. There is also evidence to the effect that she continued to suffer small strokes. For a number of years she had found it necessary to use certain drugs, including phenobarbital and thorazine. There is evidence to the effect that her physical condition worsened and to the effect that she was not mentally alert, while there is other evidence to the effect that she was alert, that she took care of her own affairs, and that she knew what she was doing. She had a housekeeper for the last seven years of her life, but the housekeeper took Fridays off and enjoyed a month's vacation during August and September in 1957. It appears that Catherine Bailey handled her own financial affairs, including her own bank *246 account, payment of her bills, and consultations with her tax advisors and accountants.
Much of the evidence on behalf of the appellants as to testamentary incapacity consisted of expert medical testimony given by two physicians through hypothetical questions propounded to them. On the other hand, testimony on behalf of the appellee included that of the only surviving witness present when the will was made, secretary to the now deceased attorney who drafted it. That witness testified that she visited at Mrs. Bailey's home in the summer of 1957 and again on November 22, 1957, when the will was executed and that the deceased was alert and in good health on both occasions. She testified additionally that Mrs. Bailey stated at the time the will was executed that, concerning Hugh Bradley Bailey, "* * * she felt that she had fixed it so that he would get what she had." The personal physician of Mrs. Bailey who from 1950 until her death made weekly house calls upon the deceased, stated that she listened to the radio, liked television, watched the horse races on television, had a good grasp of the betting odds, had good comprehension, and in his opinion was competent to execute her will on the date she did so. Three other witnesses who had known the decedent for many years were the private secretary of Edward R. Bradley, the accountant who handled the decedent's tax returns, and another accountant of the same firm. These three testified to the effect that Mrs. Bailey had been alert and possessed of good comprehension.
The appellants place great stress upon the use of drugs such as phenobarbital, thorazine, and others by the deceased over a period of time, together with her age and illness, as having impaired her mental capacity to the extent that she lacked the ability to understand the nature and extent of her property, the proper objects of her bounty, and the nature of her testamentary disposition.
That one may be a user of narcotics does not necessarily deprive him of testamentary capacity. In re Wilmott's Estate, supra. As was said in that case, at page 468 of 66 So.2d:
"He may be an addict and yet have the capacity which the law requires for making a will, if, in spite of the use of narcotics, he has sufficient mind and memory to understand the nature and extent of his property, the proper objects of his bounty and the nature of his testamentary act. Indeed, it is possible that a testator may have testamentary capacity even though it is proven that he was somewhat under the influence of drugs at the time he executes a will. The same is true where the ravages of disease combine with the effects of drugs."
See also Fernstrom v. Taylor, 1933, 107 Fla. 490, 145 So. 208.
The burden of overthrowing a will because of lack of testamentary capacity is a heavy one and must be sustained by a preponderance of the evidence. In re Kiggins' Estate, Fla. 1953, 67 So.2d 915. Under the principles here cited, the testimony of testamentary incapacity of Mrs. Bailey falls short of meeting the required criteria.
Now directing our attention to the appellants' contention as to undue influence, we see that in order for undue influence to exist such as may authorize invalidation of a will, it "* * * must amount to overpersuasion, duress, force, coercion, or artful or fraudulent contrivances to such a degree that there is destruction of the free agency and will power of the one making the will. Mere affection, kindness, or attachment of one person for another may not of itself constitute undue influence." Heasley v. Evans, Fla.App. 1958, 104 So.2d 854, 857. See also In re Starr's Estate, 1935, 125 Fla. 536, 170 So. 620; In re Peters' Estate, 1945, 155 Fla. 453, 20 So.2d 487.
*247 A testator who possesses a sound mind at the time of the execution of his will has a right to disinherit his children or others who may have a claim on his bounty. Hamilton v. Morgan, supra; and Flagler v. Flagler, Fla. 1957, 94 So.2d 592.
Again, the appellants have fallen short of sustaining their position through their failure to show that undue influence as required under the above cited principles was exerted by Hugh Bradley Bailey. The appellants' position is that presumption of undue influence arose from the asserted confidential relationship between the decedent and the primary beneficiary of the will, the unnatural provisions of the will, the appellee's opportunity to have exerted undue influence, the testatrix' expression of a contrary intent prior to the will's execution, and the decedent's advanced years.
Of the six brothers and sisters affected by the will, two of the three appellants testified against the will; one appellant did not testify; one of the original petitioners not only did not testify but withdrew from the case prior to this appeal; one brother testified in support of the will against his own interests; and, of course, the sixth is the appellee. The one who testified against his own interests, Joseph Bailey, denied both charges advanced on this appeal by the appellants, stating as his reason for not joining in the petition that to testify his mother had been senile and to testify his brother Bradley had influenced her would be swearing to things which were not true.
Of fundamental import is the long established tenet that a probate court's findings of fact based upon conflicting evidence in a will contest will not be disturbed by an appellate court where the substantial competent evidence is sufficient to sustain those findings unless the probate judge has misapprehended the evidence as a whole. Hooper v. Stokes, 1933, 107 Fla. 607, 145 So. 855, 146 So. 668; Neal v. Harrington, supra; In re Wilmott's Estate, supra; and Williams v. Kane, Fla. 1956, 88 So.2d 599. The testimony offered by the appellants conflicting with that offered on behalf of the appellees, was deemed by the probate court to have been not substantial to support the charge of undue influence and to have fallen short of showing lack of testamentary capacity on the part of the deceased at the time of the will's execution. We uphold the findings and conclusions of the court below.
Affirmed.
ALLEN, C J., and KANNER and SHANNON, JJ., concur.