KANNER, Judge.
William Morgan Grant, appellant, the brother of the deceased testatrix, complaining that admission to probate of his sister’s last will and testament constituted error, seeks review of the order of the probate judge. The order appealed was entered subsequent to extensive hearings which involved some 2,500 pages of testimony, together with exhibits, including a receptacle containing the brain of testatrix. *603 Grounds asserted for the review sought are multiple, but appellant in the main urges lack of testamentary capacity on the part of his sister and undue influence by Edward L. Raymond, appellee.
Decedent through her will disposed of an estate consisting largely of securities and debentures valued in the area of $100,000.00 and provided a monthly income of $200.00 for appellant as long as he should live, to be paid from a testamentary trust encompassing the bulk of decedent’s estate. Ap-pellee, a professional stock-broker, had known testatrix for about five years. Decedent, in her will, designated him as both the executor of the estate and trustee of the testamentary trust, vesting broad discretion in him as to the corpus and authorizing him to manage and control the trust estate in all respects as decedent would have done if living.
For some time, testatrix had been afflicted with a cancerous growth upon her brain and with arteriosclerosis; as a result of these ailments she had been hospitalized during June of 1959, and had undergone brain surgery. After the operation she was declared incompetent on July 27, 1959, by the same county judge who thereafter admitted the will to probate. Two days later, at the age of 79, she died at Sarasota, Florida, where she resided, about a week less than five months subsequent to the execution of the will.
A wealth of evidence has been presented in support of the positions of the respective parties to this cause, and much of both the lay and expert testimony is in conflict. With this in mind, the court has carefully studied the record on appeal so as to ascertain the background of the litigation and the •circumstances leading up to and including the execution by testatrix of her last will .and testament.
Testatrix and her brother, orphaned at an early age and separated while still children, saw each other rarely over the years until appellant contacted his sister at her home in Florida and removed himself there. His sister meanwhile had accumulated a substantial estate which, upon the death of her husband, vested completely in her. Conversely, the brother attained only to the status of an indigent and financially irresponsible individual. Labeling his present occupation as “retired,” appellant, 76 years old at the time of the hearings, stated under questioning that he had been retired “all my life.” Apparently, he never held regular employment but did various unskilled tasks in and about a race track. He admitted that he gambled and that he could not read, write, or perform the simplest mathematical computations. He has never had a bank account, owned a home, real estate, stocks, bonds, life insurance, or pension other than an old-age monthly pension of $66.00 currently being received. He has never had any charge accounts, filed income tax returns, nor handled sums of money other than, in his words, “ * * * a few hundred dollars, a time or two, for a day or two.” With knowledge of the status and proclivities of her brother, testatrix habitually had sent him about $50.00 a month, along with additional sums when needed for hospital and doctor’s bills.
Testatrix had purchased and sold securities through appellee for approximately five years, and he had advised her concerning her investments. In January 1959, decedent, who had previously indicated to appellee that she wished to make a will, asked him to suggest an attorney who might draw the instrument for her. Appellee recommended one James M. Wallace, an attorney having offices in the nearby town of Bradenton, Florida, and then made some rough notes in regard to the matters that decedent wished to have incorporated in her will. Appellee contacted Mr. Wallace concerning the projected will, and delivered the notes to him for his use.
Later in the same month appellee and Wallace conferred with decedent in her home in regard to the terms of the will, and more detailed information was furnished by testatrix respecting the disposition of her property. Wallace then pro *604 ceeded to prepare the will, and on March 6, 1959, testatrix was driven by appellee to Wallace’s office in Bradenton where the provisions of the will were reviewed, after which the instrument was executed.
In the will, testatrix, after directing that the executor pay all just debts and funeral expenses, set forth certain specific bequests to four named individuals. These bequests were composed of items such as a diamond ring, several individual diamonds, a family coat of arms, a picture of the father of testatrix, and a six-piece silver tea set. One beneficiary was given permission to select any of the personal belongings and furnishings found in the residence of testatrix as the beneficiary might desire, with the proviso that approval must be forthcoming from the executor as to the selection made. The balance of her household goods and personal effects were bequeathed to the executor to be divided by him and given to the several named persons and to such others as he in his discretion might deem wise. Any remaining items could in his discretion be given away or sold, with the proceeds becoming a part of the estate. All the rest, residue and remainder of the estate was bequeathed to appellee as trustee for certain specific uses and purposes.
Appellant brother, if he survived testatrix, was to receive the sum of $200.00 per month as long as he should live, beginning immediately. Additional amounts were to be supplied as necessary for hospital, nursing, and care expenses of appellant during his lifetime, and provision was further made for his funeral and burial expenses. Finally, the trustee was authorized and directed in his discretion to pay such additional sums to appellant for his health, welfare, and comfort as was deemed necessary by the trustee. Full authority was given the trustee to manage and control the trust estate and to engage in any commercial transactions in connection with it as might in his discretion seem proper.
Upon the death of appellant, the rest, residue and remainder of the estate was to be delivered to the intestate successors of testatrix under the laws of Florida, with the exception that in this respect appellant brother was to be considered as not having survived testatrix. If no such heirs were located, then the corpus would be transmitted to the heirs of the husband of testatrix. Appellee was appointed executor; and the scrivener of the will was appointed attorney for the estate and trust fund.
The right to dispose of one’s property through the instrumentality of a will is highly valuable, and it is the policy of the law to hold a will good wherever possible. See Skelton v. Davis, Fla.App. 1961, 133 So.2d 432; In re Donelly’s Estate, 1938, 137 Fla. 459, 188 So. 108. The law has prescribed no limit as to the age beyond which one may no longer dispose of his property by will, but instead the will of an aged person has been said to be the object of tender regard. In re Starr’s Estate, 1935, 125 Fla. 536, 170 So. 620. See also 34 Fla.Jur., Wills, section 25, page 442. Mental capacity of a testator at the time he executed his will is the determining factor, and capacity to dispose of one’s property testamentarily depends upon a sound mind and not upon a sound body. The term, “sound mind,” connotes the ability of a testator to understand in a general way the nature and extent of the property to be disposed of, his relationship to those who would naturally claim a substantial benefit from the will, as well as a general comprehension of the practical effect of the will as executed. In re Willmott’s Estate, Fla.1953, 66 So.2d 465, 40 A.L.R.2d 1399; In re Bailey’s Estate, Fla.App.1960, 122 So.2d 243. Mere old age, physical frailty, sickness, failing memory, or vacillating judgment are not inconsistent with testamentary capacity if the testamentary prerequisites were possessed by the testator. This is particularly true where it appears that the will was made under fair circumstances and did not dispose of the property unnaturally. Heasley v. Evans, Fla.App.1958, 104 So.2d 854.
*605 Appellant, asserting testamentary incapacity on the part of testatrix, urges that the manner and size of the provision for him as beneficiary was unnatural, and also points to the omission from the will of certain others who allegedly were to have been given legacies. It is sufficient, however, to note that the bulk of the estate remained tj provide for the appellant brother except for the specific bequests described hereinbefore. Upon his death heirs-at-law of testatrix or those of her husband were to be the ultimate beneficiaries. By providing that the residue of the estate should go to the heirs-at-law only after appellant’s death, appellant was assured that he would derive the intended benefits which the testatrix desired him to have.
The burden of overthrowing a will on the ground of lack of testamentary capacity is a heavy one and must be sustained by a preponderance of the evidence. In re Kiggins’ Estate, Fla.1953, 67 So.2d 915. No constructive purpose can be served by a discussion of the voluminous amount of conflicting evidence concerning the testamentary capacity of the testatrix. This court is of the persuasion that substantial evidence did exist to support the decision of the probate judge on this issue.
As to appellant’s proposition that his sister’s will is a product of undue influence, it must be pointed out that for a will to be invalidated upon this ground, the undue influence charged must be such that it amounts to overpersuasion, duress, force, coercion, or artful or fraudulent contrivances to such an extent that there is a destruction of free agency and will power of the testator. Mere affection, kindness, or attachment of one person for another may not of itself constitute undue influence. See In re Bailey’s Estate, supra.
Although appellee was not named as a beneficiary to receive any property for himself, he is the person charged by appellant with having exerted undue influence. A stock salesman, he had handled certain-business transactions for testatrix for a period of about five years. As to the household goods and personal effects which testatrix bequeathed, it may be observed, from the nature of the items heretofore listed, that these constituted a comparatively negligible portion of the estate; further, appellee was directed to dispose of these in the manner previously related, with any proceeds to go into the bulk of the estate. The will does not exempt appellee from the necessity of posting a bond, and his actions both as executor and trustee are subject to supervision by and accountability to the court.
It would also seem that decedent, rather than disposing of her estate in an unnatural fashion, provided appellant brother with a lifetime income considerably in excess of that given him by testatrix while she was alive. Moreover, upon the death of appellant, the distribution of the corpus of the estate was to be made to the heirs-at-law.
Finally, appellee’s objective in exerting the undue influence, it is charged, was his personal aggrandizement and advantage, to be achieved through improper manipulation of the estate. However, this court may not properly review the anticipation of possible harm which appellant predicts may thus arise. As indicated, the will does not exempt appellee from bond nor from supervision by and responsibility to the court for his conduct and activities in connection with the estate.
It cannot be said that the county judge, by admitting the will to probate, has misapprehended the legal effect of the evidence as a whole. Since the other points raised by appellant have not upon examination established error that would compel the overruling of the decision of the probate judge, the order entered by him is affirmed.
Affirmed.
ALLEN, Acting C. J., and SMITH, J., concur.