### In re MALONE'S WILL.

No. 59960-B.

County Judges' Court, Dade County.

January 30, 1964.

William J. Neale, Miami, for Mrs. Beatrice Neale.

Sibley, Grusmark, Giblin, King & Levenson, Miami Beach, for Westminster Presbyterian Church, Thornwell Orphanage, United Cerebral Palsy Association of Miami, Florida Presbyterian College, Presbytery of the Everglades, and Mrs. Margaret Venable Wilson, contestants.

Ralph M. Cooper and Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, all of Miami, for Elmo H. Williams, co-executor 1960 will.

Padgett, Teasley & Niles, Coral Gables, for First Presbyterian Church, Jasper Memorial Hospital and Monticello Methodist Church, all of Monticello, Ga., and Stetson University, Berea College and Harris College, contestants, and for Lee C. Ezell, co-executor 1960 will.

Ray M. Earnest and M. L. Mershon, both of Miami, for Children's Home Society of Florida, contestant.

Redfearn & Simon, Miami, for University of Miami, contestant.

John G. McKay, Jr., Miami, for the Berry School, contestant.

Scott, McCarthy, Preston & Steel, Miami, for First National Bank of Miami, curator.

FRANK B. DOWLING, Judge.

This cause came on to be heard on trial and final hearing on the petition of Beatrice Neale for the probate of the will of E. B. Malone, deceased, executed on the 10th day of August, 1962, and the answer to said petition and objection to the probate of said will filed by Westminster Presbyterian Church, Thornwell

Orphanage, United Cerebral Palsy Association of Miami, Florida Presbyterian College, Presbytery of the Everglades, and Mrs. Margaret Venable Wilson. The contestants are each severally named as legatees, beneficiaries and distributees under the terms of a prior will executed by the decedent under date of March 2, 1960.

The issue made by the petition for probate and the answer of the legatees is that the purported will of August 10, 1960 was induced and procured by Beatrice Neale and William J. Neale, who each at the time of the execution of said will held the complete confidence of and bore a confidential relationship to the decedent, in that Beatrice Neale at the time of the execution of said purported will was the designated confidential representative and agent of E. B. Malone, and William J. Neale, the son of Beatrice Neale, was the personal attorney of E. B. Malone, by and through and as a direct result of the exertion and exercise by them and each of them of undue and improper influence on the mind of the decedent. Moreover, it is contended that such undue and improper influence was exerted and exercised by Beatrice Neale and her son, William J. Neale, in their own behalf and for the purpose of inducing the decedent to execute a will by which the major part of the estate of the decedent would be devised and bequeathed to Beatrice Neale and a large legacy devised to her son, William J. Neale, to the complete exclusion of the legatees under the former will.

The contestants further contend that at the time of the execution by the decedent of the purported will of August 10, 1962, he was not possessed of sufficient mental capacity and vigor to withstand such undue and improper influence, the exertion of which by Beatrice Neale and William J. Neale caused the decedent to depart from a fixed and determined testamentary intent evidenced by him through prior wills over a period of many years immediately preceding the execution of the will of August 10, 1962.

The contestants further contend that at the time of the execution by the decedent of such purported will, he was not of sound mind and lacked testamentary capacity.

At the trial of the cause, these additional legatees under the former will of 1960, having also answered, appeared as contestants to the probate of said will of August 10, 1962, namely —

The Berry School
  by its attorney, John G. McKay, Jr.

University of Miami
  by its attorneys, Redfearn & Simon.

The Children's Home Society of Florida
by its attorneys, Ray M. Earnest & M. L. Mershon.

John B. Stetson University, Berea College, Young L. Harris College, First Presbyterian Church of Monticello, Georgia, Jasper Memorial Hospital of Monticello, Georgia, and Monticello Methodist Church of Monticello, Georgia by their attorneys, Padgett, Teasley & Niles.

One of the executors under the will of March 2, 1960 and the codicil thereto of August 30, 1961, namely, Elmo H. Williams, appeared at the trial of said cause by and through his attorneys, Ralph M. Cooper and Walton, Lantaff, Schroeder, Atkins, Carson & Wahl. The other executor, Lee C. Ezell, appeared by his counsel, Padgett, Teasley & Niles. The said executors petition the court for the probate of the will of March 2, 1960 together with the codicil thereto of August 30, 1961.

The First National Bank of Miami, curator, appeared by its attorneys, Scott, McCarthy, Preston & Steel, though it did not participate in the trial of said cause.

### Findings, opinion and decree

From the testimony and exhibits proffered and admitted in evidence in this cause, the court makes the following findings of fact —

1. E. B. Malone, sometimes known as Evan B. Malone, died on the 17th day of June, 1963, at the age of 74 years, 11 months and 7 days, of a spontaneous rupture of arteriosclerotic aneurysm of the aorta. In 1957 he was suffering from arteriosclerosis generalized with mild cerebral focalization. This condition increased in intensity and in its degenerative processes to the stage that between June, 1960 and December, 1960, he sustained as a direct result of this condition, a small cerebral vascular accident, or stroke. By January, 1961, the disease had advanced to the point that the prognosis of his family physician was that he would be incompetent on August 10, 1962 to understand the consequences implicit in the execution of a last will and testament.

2. The testator was a bachelor at the time of his death and had expressed the intention throughout his life to remain unmarried. He was, prior to his illness, hereinabove described, an alert, hard, careful and frugal businessman who operated his business with firm control. The clear symptoms of general arteriosclerosis with cerebral vascular involvement were plainly apparent by January, 1961. By March, 1962, his memory had become so faulty that he would ask the same question again in the same conversation even though the question had been fully

explained when first asked. This condition continued and became progressively worse until his death.

During this period of time, that is early 1962, he could not recall or remember the names of employees and close associates. He was unable to carry on a complete conversation, forgetting in the middle of a sentence the subject matter thereof, so that he could not complete the sentence or thought he was attempting to express.

During said time he could not answer his correspondence or dictate a letter, and thus he required a business associate to answer his correspondence and make business judgments and decisions for him. Simple letters and documents were presented to him for signature, the contents carefully explained to him, and yet within a short period of time he would have forgotten what he had signed. During this period, in business conferences with his associates and partners involving important business decisions, he would fall asleep, and if he expressed a thought during such conferences, it would not be relevant to the subject under discussion. After the conferences were concluded, he would indicate in his conversations that he wholly failed to comprehend what had transpired at the conferences. During this time he showed a lack of confidence in a man who had been his partner for sixteen years, a trusted friend, and associate. He also expressed a lack of confidence in his accountant upon whom he had for many years relied as a business advisor, and in fact, from late 1961, to May, 1962, this advisor had made business judgments and decisions for him.

In March, 1962, he accused this trusted advisor and friend of having procured his signature to papers and documents without furnishing him copies thereof and of procuring his signature to papers and documents which he had not known he was signing and the contents of which were not explained to him. Thereafter, he called this associate and business advisor on the telephone and apologized, stating that the associate was a mother to him, and that he must have been crazy to even think that his friend had indulged in such conduct. He referred to himself as being crazy. He asked his associate for forgiveness and was crying at the time of the conversation. Within thirty days after this conversation, he wrote his friend and advisor, peremptorily discharging him.

In September, 1962, he met his grandnephew, a boy he had known all his life, but he was unable to recognize him or call his name.

3. In 1957, the decedent moved into the residence of Mrs. Beatrice Neale, a widow. He lived in this residence with her,

occupying the second floor, until he was adjudicated incompetent on the 28th day of March, 1963. Only he and Mrs. Neale occupied the home from 1960 up until March, 1963. Mrs. Neale testified that he had proposed marriage to her in 1956 and had from time to time thereafter renewed his request for marriage. The decedent had breakfast with Mrs. Neale and usually had the evening meal with her although up until January 1, 1962, he usually went to his place of business during the day. Mrs. Neale's residence is about 50 to 75 feet from her office which is a separate building consisting of a waiting room, a room containing her office, and a room containing the office of her son, William J. Neale, a lawyer. From 1957, the time in which decedent moved into Mrs. Neale's home, until on or about December, 1961, William J. Neale had not represented the decedent as his attorney.

4. In December, 1961, Mrs. Neale drove Mr. Malone out to a home maintained for elderly incompetents. There she showed Mr. Malone the manner in which incompetents were treated, and especially pointed out to him an old lady who was chained to a chair and who, as she put it, sat there in her own filth. This demonstration had a marked impact upon the mind of the decedent. He expressed to his business associates the horror of being confined in such fashion and expressed fear of having this occur to him.

5. Some years prior to this, the decedent and his partner and cousin, Lee C. Ezell, had entered into an agreement that if either became incompetent, the agreement would be presented to the county judge requesting the appointment of the other as the guardian. After the experience of December, 1961, the decedent commenced to continuously demand the surrender by Ezell of "that agreement." This demand would be made the first thing in the morning when he arrived at work after having been driven there by Mrs. Neale. The decedent could not recall the nature of the agreement but all he could ask for was "that agreement."

Thereafter, the influence of Mrs. Neale upon the decedent became decidedly more pronounced. Her son was employed as the exclusive attorney for E. B. Malone. He was present with Mr. Malone at every business conference thereafter as the decedent's advisor and attorney.

6. The decedent, commencing at least as early as 1949, had established a firm, fixed and determined testamentary intent. The decedent's will of May 26, 1948 (contestants' exhibit no. 2) made specific bequests in nominal amounts to employees of the decedent's business and the balance was bequeathed and devised to charities. The decedent's will of December 10, 1951 (contestants' exhibit no. 3) followed the same pattern. On May 11,

1956, a codicil was executed to the will of December 10, 1951, which reconfirmed the testamentary intent of the decedent, (contestants' exhibit no. 4). Again on May 17, 1957 (contestants' exhibit no. 5) the decedent executed a will with the identical testamentary intent expressed in the former wills. After making small bequests to employees of his business, all of his property was bequeathed and devised in varying amounts to named charities. During this time he had expressed to his business associates, to his attorneys, to his relatives and to his friends, a determination that his property would be bequeathed to charity and he expressed the determination that his property would not be saddled with death taxes, and for that reason his property would go to worthy charities. His will of March 2, 1960, followed the fixed pattern adopted by him with no change in testamentary intent or purpose. This was followed by the codicil of August 30, 1961, which reaffirmed his fixed testamentary purpose.

After William J. Neale became the sole attorney for E. B. Malone and after the ravages of his disease had advanced as heretofore found, Mr. Malone sent for his will of March 2, 1960, and its codicil which was held in the safety deposit box of his trusted advisor and friend, Elmo Williams. This will was delivered to William J. Neale in April, 1962. By June, 1962, E. B. Malone seldom went to his place of business. He spent most of his time puttering around the house of Mrs. Neale and around the office of her son and his attorney, William J. Neale. According to the testimony of William J. Neale, the decedent reaffirmed his testamentary intent as of June, 1962, by executing a codicil which did not change any of the beneficiaries under his will of March 2, 1960. This codicil which Mr. Neale says he prepared and had executed by the decedent was subsequently destroyed and he says no copies are extant.

7. From 1957 until January 5, 1962, Mrs. Neale testified that these are the only gifts she had received from the decedent, notwithstanding his ardent desire to marry her which he had exhibited since 1956, and notwithstanding the fact that they had occupied the same home since 1957 —

a) A $50 deposit in a federal savings and loan company;

b) A semi-precious stone purchased in 1956;

c) An old Chrysler automobile, 1953 vintage, given to her in 1957.

Notwithstanding the close relationship between Mrs. Neale and Mr. Malone since 1956, he made a codicil to his will of May 11, 1956, but made no mention of Mrs. Neale as a beneficiary. Again, on May 17, 1957, he executed a new will but made no mention of Mrs. Neale in the will and made no provision for her therein.

Again, on March 2, 1960, he made another will, but made no mention of Mrs. Neale therein, and made no provision for her in said will. Again, on August 30, 1961, he made a codicil and in that codicil he made no mention of Mrs. Neale and made no provision for her therein.

Her son, William J. Neale, testified that in the codicil of June, 1962, prepared by him and destroyed by the decedent, no provision was made for Mrs. Neale as a beneficiary, although he claims his mother was mentioned as the executrix. From July, 1962, until January, 1963, Mr. Malone was spending most of his time at the residence or in the office of Mrs. Neale, and was in the presence of either Mrs. Neale or her son most of the time. Friends, relatives and business associates found it difficult to reach him or communicate with him. If they called to make an appointment to see him, Mrs. Neale would give one excuse or another why he could not be visited, or if they reached the decedent on the telephone, he would always have to consult with someone present at the Neale home before he could permit anyone to call to see him, and usually after such consultation he would find some reason why he was unable to receive visitors.

8. On July 23, 1962, a letter signed by E. B. Malone bearing the secretary's letters "bn" (Beatrice Neale) advised the First National Bank of Miami that they were to "furnish my secretary, Beatrice Neale, with any and all information *she requests* regarding my personal account in your bank." (contestants' exhibit no. 12)

On November 20, 1962, a letter signed by E. B. Malone bearing the secretary's letters "bn" (Beatrice Neale) advised Mr. Tom Teasley, his former attorney, "This is to inform you that I have placed all my personal business in the hands of Beatrice Neale . . . including this mortgage which I hold on your mother's house. Therefore all payments regarding this mortgage will be paid directly to Beatrice Neale. Also any decisions she might make regarding this mortgage will be final." (contestant's exhibit no. 9)

9. From July, 1962, until the decedent was adjudicated incompetent on March 28, 1963, Mrs. Neale procured the following property from the decedent —

a)  On October 8, 1962, a new Oldsmobile automobile at the approximate cost of $4,000. (contestants' exhibit no. 18)

b)  On November 19, 1962, $50,000 in cash. Mr. Malone made the check payable to himself, endorsed it on the back, and then he and Mrs. Neale went to the First National Bank of Miami where he cashed the check and gave the funds to Mrs. Neale. She placed the funds in her safety

deposit box and stated that this was a gift with no strings attached. (contestants' exhibit no. 13)

c) On November 21, 1962, $35,000 in cash. The check was drawn payable to E. B. Malone, endorsed by him on back and Mrs. Neale and Mr. Malone went to the bank and and cashed the check, the funds were counted out to him, and he immediately turned the same over to Mrs. Neale who thereupon placed the funds in her safety deposit box in the Florida National Bank, stating that this was also a a gift to her with no strings attached. (contestants' exhibit no. 14)

d) On March 8, 1963, $3,000. Check was made payable to Beatrice Neale and endorsed on the back by her with the notation "for secretarial services". (contestants' exhibit no. 15)

e) On March 15, 1963, $5,000. Check was drawn payable to E. B. Malone, endorsed by him and Mrs. Neale, which she says was to purchase a wedding ring for herself, which she never purchased. (contestants' exhibit no. 17)

The court finds that according to Mrs. Neale's testimony there was no change in her relationship with Mr. Malone from 1956 until March, 1963. The only change the court finds that occurred during this period of time was the change in the physical and mental competency of E. B. Malone. The degenerative process of his malady by 1962 had rendered him incompetent and subject to the influence of designing people.

The evidence shows without dispute that from January 1, 1962 until Mr. Malone was adjudicated incompetent, both Beatrice Neale and William J. Neale held his complete confidence and trust. During the summer of 1962, Mrs. Neale testified that Mr. Malone was preparing changes to his will and would sit at the kitchen table at night and would mark his old will with red pencil. She was present while the consideration of these changes was taking place. During this time, Mr. Malone was consulting with her son and with her with reference to making changes in his will. William J. Neale testified that he consulted with Mr. Malone three or four times. Then, on August 10, 1962, a will was prepared by William J. Neale and he procured its execution by E. B. Malone. This will completely departs from the fixed testamentary intent expressed by the decedent over a period of fifteen years prior to August 10, 1962.

Under the will of March 2, 1960, the charities are to receive approximately $1,500,000. Under the will of August 10, 1962, there is only $28,000 willed to charities. The difference is bequeathed to Mrs. Neale. The decedent's fixed determination to

protect his estate from death taxes is wholly abandoned under the will of August 10, 1962. Both William J. Neale and Mrs. Neale were present at the time that this will was executed by E. B. Malone. This will also provides for a substantial legacy to William J. Neale and appoints him as the attorney for the estate and administration thereof. William J. Neale personally typed the will and was a witness thereto.

Undue influence may be established by the results of what has occurred. Thus, a sudden change in a fixed testamentary intent wholly unexplained is a strong circumstance to support a claim of undue influence. Newman v. Smith, 77 Fla. 633, 82 So. 236.

If the persons who are the beneficiaries of this change in testamentary intent occupy a confidential relationship to the testator, and are present at the execution of the will, the inferences from these facts and circumstances warrant a finding of undue influence and no direct evidence of such influence is necessary. In re Estate of Madelon C. Reid (Fla.), 138 So.2d 342.

The relationship of attorney and client involves the greatest degree of trust and confidence. The relationship has its very foundation in the implicit trust and confidence the client reposes in the attorney selected to represent him. Where an attorney, in preparing a will for his client, provides for a substantial legacy for himself and provides that his mother shall, as chief beneficiary, receive the bulk of the estate under the will, and it appears that such attorney is the sole heir at law of his mother, such facts clearly create a presumption of undue influence. In re Estate of Madelon C. Reid, supra. Under such circumstances, if the testator's mental powers were impaired and his intellect clouded, a heavier burden and a higher degree of proof is required of the beneficiary to overcome the inference of undue influence than would be required if the testator was mentally strong and in good health.

Moreover, where the testator's mental condition has been impaired and the chief beneficiary under his will occupied a confidential relationship with the testator and actively participated in drafting and in the execution of the will, and the will is kept exclusively in such beneficiary's possession until after the death of the testator, the presumption of the exertion of undue influence on the part of the beneficiary arises. In re Palmer's Estate (Fla.), 48 So.2d 732.

Likewise, where a testator, mentally and physically depleted as a result of a progressive affliction, namely cerebral arteriosclerosis, makes a will to the decided advantage of a party who has an opportunity to exercise influence on the testator, the burden of proof is on the beneficiary to establish that no such in-

fluence was brought to bear on the testator. In re Auerbacher's Estate (Fla.), 41 So.2d 659.

Also, where the disposition of an estate by will was inconsistent with the prior expressed intention of the testator and the execution of the will is surrounded by suspicious circumstances, the burden is on the beneficiary to show that the will was a free and voluntary act of the testator and that he was in his right mind when he executed the will. In re Gottschalk's Estate, 143 Fla. 371, 196 So. 844.

Applying these legal principles to the facts of this case, the court finds that the evidence clearly establishes that the will of August 10, 1962 was procured through undue influence exerted upon E. B. Malone by Beatrice Neale and William J. Neale, at a time when Malone was suffering mental and physical depletion and incompetency as a result of advanced cerebral arteriosclerosis.

It is therefore ordered and adjudged that the petition for the probate of the purported will of E. B. Malone of August 10, 1962, be and the same is hereby denied.

The evidence discloses that at the time of the execution of the will of August 10, 1962, the testator destroyed a former will and codicil dated respectively March 2, 1960 and August 30, 1961. The destruction and revocation of this will was procured by undue influence, and such revocation is void. F. S. 731.09. A true photostatic copy of the last will and testament of the decedent of March 2, 1960, together with a photostatic copy of the codicil thereto of August 30, 1961, were produced and have been introduced in evidence in this cause. The testimony of the witnesses to the execution of said will and codicil was produced, and the said photostatic copy of said will and codicil have been duly established by the testimony of the subscribing and attesting witnesses thereto as being a true and exact copy of the last will and testament of E. B. Malone, the decedent. The testimony having fully complied with the provisions of F. S. 732.27 (3) and it appearing to the court that the last will and testament of E. B. Malone and the codicil thereto as aforesaid should be established, therefore, the same be and it is hereby established in its full and precise terms and provisions as follows —

### LAST WILL AND TESTAMENT
#### OF
#### E. B. MALONE,
##### also known as
#### EVAN B. MALONE

I, E. B. MALONE, also known as EVAN B. MALONE, a resident of Miami, Dade County, Florida, being of sound and disposing mind and memory, do hereby make, declare and publish this to be my Last Will and Testament, hereby revoking all others by me heretofore made.

## ARTICLE I.

I direct that all my just debts, funeral expenses, inheritance taxes, if any, and testamentary expenses, be paid by my personal representatives as soon as possible after my death.

## ARTICLE II.

During my lifetime I have made gifts of certain items of jewelry, personal effects, library, etc., to certain members of my family. Should any of these articles happen to be in my possession at the time of my death, I direct my personal representatives to deliver to the recipient of such gifts the articles in question upon the recipient producing written proof of his or her right to any article or articles so claimed.

## ARTICLE III.

After the payment of the items referred to in Articles I. and II. hereof, I give, devise and bequeath unto the following named persons, if they survive me, the sums of money set forth opposite their names, to-wit:

1. I give, devise and bequeath unto my sister, Mrs. Bertha Malone Jordan, the sum of Three Hundred Fifty And No/100 ($350.00) Dollars per month during her lifetime. I direct that the payment of this bequest shall begin on the first day of the next month after the date of my death and shall be payable thereafter on the first day of each and every month during the life of my sister.

2. I give, devise and bequeath unto my sister-in-law, Mrs. Daisy Bell Kingman Malone, wife of my brother Randolph Augustus Malone, One Hundred And No/100 ($100.00) Dollars per month for a period of five (5) years (sixty months.) I direct that the payment of this bequest shall begin on the first day of the next month after the date of my death and shall be payable thereafter for a period of five (5) years (sixty months). In the event she shall predecease me, or in the event of her death prior to the expiration of the five (5) year period, the monthly payments of One Hundred And No/100 ($100.00) Dollars are to cease except that any payments which shall have become due her and shall not have been paid shall be paid in due course.

I direct that the payments above provided for are to be made from income during the administration of my estate provided, however, that if the income is insufficient for such purpose such payments shall be made from the corpus of my estate.

3. After the payment of the items referred to above hereof, I give, devise and bequeath unto the following named persons, if they survive me, the sums of money set forth opposite their names, to-wit:

| | | |
|---|---|---|
| 1. | Evan J. Jordan, Nephew—Monticello, Ga. | $10,000 |
| 2. | Randolph A. Malone, Sr., Nephew—Miami, Fla. | 10,000 |
| 3. | John S. Malone, Sr., Nephew—Jacksonville, Fla. | 10,000 |
| 4. | Mrs. Elizabeth Malone Palmer, Niece—St. Simon, Ga. | 10,000 |
| 5. | Mrs. Daisy Belle Malone Henderson, Niece—Monticello, Ga. | 10,000 |
| 6. | Annie K. Malone Ballard, Niece—Monticello, Ga. | 10,000 |
| 7. | Mrs. Martha Malone Warren, Niece—Monticello, Ga. | 10,000 |
| 8. | Mrs. Henrietta Ezell Malone, Cousin—Monticello, Ga. | 10,000 |

It is my intention to give to my said nephews, nieces and cousin the sum of Ten Thousand And No/100 ($10,000.00) Dollars each, either during my lifetime or upon my death, but no more. Therefore, during my life, from the date of this Will, if I shall have made gifts of money, or gifts of securities, to any of the persons named above, I direct my executors to deduct the total of such gifts of money or value of securities given to any of the above named persons from the amount set opposite their names to arrive at the amount payable to each under this Article of my Will.

## ARTICLE IV.

After the payment of the items referred to in the preceding Articles hereof, I give, devise and bequeath unto the following named persons, the sums of money set forth opposite their names, to-wit:

1. Ronald S. Wilson, D.D., Pastor of the Westminster Presbyterian Church, 4201 N. E. 2nd Avenue, Miami, Fla., or to his wife, Margaret Venable Wilson, if she survives him ............ $10,000
2. Frank F. Collins, Business Associate—Miami, Fla. .......... 5,000
3. R. Z. Bolton, Employee—Miami, Fla. .......... 2,500
4. Gladys Ruple Senter, Employee—Miami, Fla. .......... 2,500
5. Howard Jones, Friend—Miami, Fla. .......... 1,000
6. Mildred Stone, Employee—Miami, Fla. .......... 1,000
7. Gordon R. Paterson, Business Associate—Jacksonville, Fla. .......... 5,000
8. A. J. Collins, Employee—Tampa, Fla. .......... 2,000
9. Manuel Gispert, Employee—Tampa, Fla. .......... 500
10. Mary Saporite, Employee—Tampa, Fla. .......... 500
11. Willie Scott, Employee—Tampa, Fla. .......... 500
12. E. J. Jorczak, Employee—Miami, Fla. .......... 1,000
13. Sam Rolle, Employee—Miami, Fla. .......... 500
14. Russell Ryals, Employee—Miami, Fla. .......... 500
15. Robert Gregg, Employee—Miami, Fla. .......... 1,000
16. Ruben Stein Davis, Employee—Miami, Fla. .......... 500
17. Tom Norris, Employee—Jacksonville, Fla. .......... 500
18. Margaret K. Frank, Employee—Jacksonville, Fla. .......... 1,000
19. Jane Walker, Employee—Jacksonville, Fla. .......... 500
20. Add Grant, Employee—Jacksonville, Fla. .......... 500
21. William Corren, Employee—Jacksonville, Fla. .......... 500
22. Riley Crews, Employee—Jacksonville, Fla. .......... 500
23. Lucius Dicks, Employee—Jacksonville, Fla. .......... 500
24. Aaron M. Finn, Employee—Jacksonville, Fla. .......... 500
25. Johnnie Durham, Employee—Jacksonville, Fla. .......... 500
26. John T. Smith, Employee—Jacksonville, Fla. .......... 500
27. James Jones, Employee—Miami, Fla. .......... 500
28. Charles Nelson, Employee—Miami, Fla. .......... 500
29. Eddie Jones, Employee—Miami, Fla. .......... 500
30. Leon Arthur, Employee—Miami, Fla. .......... 500

If any of the persons named above shall predecease me, or shall not be in my employment, or shall not be associated with me as a business partner, the bequest made to such person shall lapse except with respect to the bequest made to Ronald S. Wilson, and as to said bequest, should the said Ronald S. Wilson not survive me and be survived by his wife, Margaret Venable Wilson, then and in such event the bequest shall be paid to Margaret Venable Wilson, however, if Ronald S. Wilson and Margaret Venable shall both predecease me, then and in such event the bequest made to them shall also lapse.

## ARTICLE V.

After the payment of all of the foregoing, I direct my Executors to purchase U. S. Government Bonds at a cost of Three Thousand And No/100 . . . ($3,000.00) Dollars, which bonds I hereby give, devise and bequeath and direct my Executors to pay over to the person, persons or organizations charged with and discharging the responsibility of maintaining West View Cemetery, Monticello, Georgia, the income from which said bonds shall be used for the perpetual maintenance of the J. S. Malone, Sr., family burial lot, and the lot of Rubin Jordan and Bertha M. Jordan, which said lots are more particularly described as follows, to-wit:

| | | |
|---|---|---|
| J. S. Malone, Sr. | — | Section W, Lot 8 |
| R. A. Malone, Sr. | — | Section W, Lot 7 |
| J. S. Malone, Jr. | — | Section W, Lot 6 |
| Reuben Jordan and | | |
| Berta Malone Jordan | — | Section Z, Lot 1 |

The above lots are in West View Cemetery, Monticello, Georgia, as described more specifically on a Plat of C. T. Edwards, Surveyor, recorded in Plat Book 1, Folio 88, Clerk's Office, Jasper Superior Court.

## ARTICLE VI.

After the payment of the items and bequests set forth in the prior articles hereof, I give, devise and bequeath unto the organizations hereinafter named the sums of money set forth opposite each name as follows, to-wit:

1.  Westminster Presbyterian Church,
    4201 N. E. 2nd Avenue, Miami, Fla.                                   $50,000
2.  First Methodist Church, Hillsborough, Jasper County, Ga.               5,000
3.  First Presbyterian Church, Monticello, Jasper County, Ga.            25,000
4.  First Baptist Church, Monticello, Jasper County, Ga.                 10,000
5.  Salvation Army of Miami, Fla. for use in the
    Greater Miami area only                                              10,000
6.  Young Men's Christian Association of Miami, Fla.
    (40 N. E. 3rd Avenue)                                                25,000
7.  Children's Home Society of Florida, Southeastern Division,
    to be used in the Greater Miami area only                            25,000
8.  American Children's Home, 809 N. W. 14th Street, Miami, Fla.         10,000
9.  National Children's Cardiac Hospital,
    4250 West Flagler Street, Miami, Fla.                                20,000
10. The Thornwell Orphanage, Clinton, S. C. Founded 1875,
    maintained and operated by the Presbyterian Church, U. S.           50,000
11. Jasper Memorial Hospital, Inc., Monticello, Ga.                      50,000
12. Variety Children's Hospital, 6125 S. W. 31st St., Miami, Fla.        25,000
13. The Miami Heart Institute, Miami Beach, Fla.                         20,000
14. The Cancer Institute of Miami, 1155 N.W. 14th St., Miami, Fla.       15,000
15. United Cerebral Palsy Association of Miami, Inc.,
    1411 Northwest 14th Ave., Miami, Fla.                                20,000
16. University of Miami, Inc., Coral Gables, Fla.                        50,000
17. The Florida Association of Workers for the Blind, Inc.,
    601 S. W. 8th Ave., Miami, Fla.                                       5,000
18. South Florida Council, Boy Scouts of America,
    for Capital Account                                                  20,000
19. Monticello Methodist Church of Monticello, Ga.                       25,000
20. Union College of Barbourville, Ky.                                    8,000
21. Florida Presbyterian College, St. Petersburg, Fla.                  50,000
22. American Cancer Society of Dade County,
    2 S. E. 13th St., Miami, Fla.                                        10,000
23. The Presbytery of the Everglades of the Presbyterian Church
    in the United States for Home Mission Work                          40,000
24. Boys Club of America, 381 Fourth Ave., New York, N. Y.               5,000

If at the time of my death any of the organizations set forth above are not qualified to receive tax free gifts for the purpose of Federal estate tax deductions, the gift to such organization shall lapse and shall become a part of the residue of my estate.

With respect to the provision made for Jasper Memorial Hospital, Inc., Monticello, Georgia, I direct that this sum shall be held, and for a period of five (5) years from the time of my death shall be used only for the purpose of maintaining the hospital properties, and at the end of such five (5) years period, the remaining portion of the principal of said bequest, and all income thereof, which has not been used in the maintenance of its properties shall be used by the said hospital for the purpose of enlarging and equipping its currently owned buildings or for the erection of new buildings.

## ARTICLE VII.

During my lifetime I have given to John B. Stetson University, DeLand, Florida, undivided portions of property owned by me in Dade County, Florida, described as follows, to-wit:

Lots 1 - 4, and the North 33.33 feet of Lot 5, Block 11, ALICE BALD-
WIN, JENNIE M. AND C. E. OXAR SUBDIVISION As Amended, ac-
cording to the Plat thereof recorded in Plat Book B at page 87, of the
Public Records of Dade County, Florida.

In the event at the time of my death I have not conveyed the full fee title
of the aforesaid property to John B. Stetson University pursuant to my
existing program of donations, then and in such event I direct my personal
representatives, as soon as the same can be done without disturbing the
ordinary probate of my estate, if necessary for the full vesting of title of
the aforesaid property in John B. Stetson University to convey any and all
remaining interest I may have in the aforesaid property to John B. Stetson
University.

## ARTICLE VIII.

All of the rest, residue and remainder of my estate, whether real, personal
or mixed, and any property or interest over which I may have a power of
appointment, and wheresoever the same may be situate, I give, devise and
bequeath unto the following organizations, to-wit:

1. The Thornwell Orphanage, Clinton, S. C., Founded 1875—
   Maintained and operated by Presbyterian Church, U.S.    5/10ths
2. Young L. Harris College, Young Harris, Ga.              2/10ths
3. Berry College, Rome, Ga.                                2/10ths
4. Berea College, Berea, Ky.                               1/10ths

## ARTICLE IX.

I hereby nominate, designate, constitute and appoint LEE C. EZELL and
ELMO H. WILLIAMS, Miami, Florida, as Executors of this my Last Will
and Testament. In the event of the death, absence, refusal or inability of
either of said persons to act in such capacity, then and in such event I nomi-
nate, designate, constitute and appoint ROBERT Z. BOLTON, Miami, Flor-
ida, as alternate, to be Executor in the place and stead of the person so
failing or refusing to serve. I direct that no bond or bonds shall be required
of my Executors, whether acting jointly or individually, in any Court or
jurisdiction where this Will or an authenticated copy thereof shall be offered
for probate. It is my wish and I direct that there shall at all times be two
personal representatives of my estate.

## ARTICLE X.

For the payment of my debts, for the administration of my estate, for the
distribution thereof, and for any and all other proper purposes, I authorize and
empower my said personal representatives, to let, lease, mortgage, sell and
convey any and all of the property, real, personal or mixed, belonging to my
estate, either at public or private sale, at such time or times, for such prices
and upon such terms as to cash and credit, as they may think best, and
without court approval, and to execute and deliver any and all instruments
in writing necessary or proper to carry this provision into effect, without
liability on the part of the purchaser or purchasers to see to the proper appli-
cation of the purchase money.

## ARTICLE XI.

I further authorize and empower my said personal representatives to
receive, handle, manage, exchange, invest and keep invested, sell, rent, lease
or encumber or otherwise handle the property of my estate, whether real,
personal or mixed, including the management or continuing in business, so
long as the same shall be deemed advisable, of any business or partnership
which I may own or which I may have an interest, without regard to the
laws of Florida, or any other jurisdiction, as to so called "legal investments,"
in the same manner as I might do if I were alive.

## ARTICLE XII.

It is my wish and I hereby direct that my personal representatives shall continue the administration of my estate until such time as all of the specific bequests herein made shall have been fully paid. That is to say, my personal representatives are hereby expressly authorized to defer the closing of the probate proceedings hereof until such time as all of the specific bequests shall have been fully paid, it being my intention and desire that no forced sale of any of the assets of my estate shall be required at any time in order to enable my personal representatives to pay the bequests. I direct that there shall be no deferment in payment of bequests to Berta Malone Jordan and Daisy Bell Kingman Malone as provided in Article III. hereof. I expect my estate to be sufficiently liquid, after the payment of all debts, to pay the specific bequests of Articles III. and IV. hereof within the normal probate period. As to the bequests in Articles V. and VI. hereof, my personal representatives are specifically authorized to extend the period of probate for such time as may be required to permit them to pay in full first the bequests in Paragraph V., and then the bequest in Paragraph VI. In paying such bequests my personal representatives are expressly authorized to make prorata or partial payments from time to time upon account of any given class of bequests, and no bequest shall bear or earn interest by reason of the delay or prepaid payments thereof.

## ARTICLE XIII.

I authorize my personal representatives in their discretion to vote in person or by proxy on stocks or other securities, to exchange the securities of any corporation for other securities issued by the same or any other corporation, at such time and upon such terms and conditions as they may deem proper; to consent to the reorganization, consolidating or merger of any corporation, or the sale or lease of its property, or any portion thereof, to any person or corporation, and to exercise any option for the conversion of any stocks, bonds or securities into other securities.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, this 2nd day of March, A. D. 1960.

E. B. MALONE
/s/ *E. B. Malone*   (SEAL)
E. B. Malone, also known
as Evan B. Malone

This instrument, consisting of this page and eight (8) other pages, was SIGNED, SEALED, PUBLISHED AND DECLARED by E. B. Malone, also known as EVAN B. MALONE, the Testator, as and for his Last Will and Testament, in our presence; and we, thereupon, at his request and in his presence and in the presence of each other, have hereunto subscribed our names as attesting witnesses and our respective places of residence on the day of the execution hereof.

/s/ *Cleo McFarlin*   2645 S. W. 78th Ct., Miami, Fla.
/s/ *Francis Davison*   1436 Ancona Ave., Coral Gables, Fla.
/s/ *T. H. Teasley*   1177 N. E. 100th St., Miami Shores, Fla.

FIRST CODICIL
to
LAST WILL AND TESTAMENT
of
E. B. MALONE
also known as
EVAN B. MALONE

I, E. B. MALONE, also known as EVAN B. MALONE, as resident of Dade County, Florida, being of sound and disposing mind and memory, do hereby make, publish and declare this to be the First Codicil to the Last Will and

Testament executed by me on March 2, 1960, in the presence of Cleo McFarlin, Thomas Davison and T. H. Teasley.

## ITEM A

I revoke and annul Paragraph 3 of ARTICLE III of my said Will, and in lieu and substitution thereof, I provide as follows:

After the payment of the items referred to in ARTICLE I, ARTICLE II and Paragraphs 1 and 2 of ARTICLE III of my said Will, I give and bequeath unto the following named persons, if they survive me, the sums of money set opposite their names, to-wit:

| | | |
|---|---|---|
| (1) | Evan J. Jordan, Nephew—Monticello, Ga. | $20,000 |
| (2) | Randolph A. Malone, Sr., Nephew—Miami, Fla. | 20,000 |
| (3) | John S. Malone, Sr., Nephew—Jacksonville, Fla. | 20,000 |
| (4) | Mrs. Elizabeth Malone Palmer, Niece—St. Simon, Ga. | 20,000 |
| (5) | Mrs. Daisy Belle Malone Palmer Henderson, Niece—Monticello, Ga. | 20,000 |
| (6) | Annie K. Malone Ballard, Niece—Monticello, Ga. | 20,000 |
| (7) | Mrs. Martha Malone Warren, Niece—Monticello, Ga. | 20,000 |
| (8) | Mrs. Henrietta Ezell Malone, Cousin—Monticello, Ga. | 20,000 |

It is my intention to give to my said nephews, nieces and cousins the sum of Twenty Thousand Dollars ($20,000.00) each either during my lifetime or upon my death, but no more. Therefore, during my lifetime, from the date of my said Will, if I shall have made gifts of money, or gifts of securities, to any of the persons named above, I direct my Executors to deduct the total of such gifts of money or value as of date of gift of securities given to any of the above named persons from the amount set opposite their names in order to arrive at the amount payable to each of them under the provisions of this paragraph.

## ITEM B

I add to ARTICLE IV of my said Will the following:

I give and bequeath unto HERBERT LOUIS WILLIAMS, SR., son of Elmo H. Williams, the sum of Two Thousand Five Hundred Dollars ($2,500.00). It is my desire that such bequest shall be used by Herbert Louis Williams, Sr., to defray a portion of the cost of the education of his children.

## ITEM C

I add to ARTICLE VI of my said Will, the following:

I give and bequeath unto JOHN B. STETSON UNIVERSITY, DeLand, Florida, the sum of One Hundred Thousand Dollars ($100,000.00).

If said organization is not qualified to receive tax free gifts for the purpose of Federal estate tax deductions at the time of my death, then the bequest to such organization shall lapse and the same shall become a part of the residue of my estate.

## ITEM D

In all other respects I ratify and confirm all of the provisions of my said Will dated March 2, 1960.

IN WITNESS WHEREOF, I have hereunto set my hand and seal at Miami, Florida, this 30th day of August, 1961.

/s/    E. B. Malone        (SEAL)

118

The foregoing instrument, consisting of this and one preceding typewritten page, was signed, sealed, published and declared by E. B. MALONE, the Testator, to be the First Codicil to his Last Will and Testament, in our presence, and we, at his request and in his presence and in the presence of each other have hereunto subscribed our names as witnesses this 30 day of August, 1961, at Miami, Florida.

/s/ *Paul W. Carmichael*    900 N. W. 128th St., Miami, Fla.
/s/ *Robert E. Kurtz*    733 Camilo Ave., Coral Gables, Fla.
/s/ *R. M. Cooper*    1901 Country Club Prado, Coral Gables, Fla.

It is further ordered and adjudged that the last will and testament as established above of E. B. Malone, sometimes known as Evan B. Malone, bearing date the 2nd day of March, 1960, together with the codicil thereto of August 30, 1961, be and the same are hereby admitted to probate according to the law as and for the true last will and testament of said decedent, and that the said will together with the codicil thereto be duly recorded in the book of wills, and that the cost of recording same be taxed as costs against this estate.

Let letters testamentary issue to Elmo H. Williams and Lee C. Ezell the executors named in said will, upon their severally taking and subscribing the prescribed oath.